UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTIN H.,[1] | : | Case No. 2:22-cv-3869 |
| | : | |
| Plaintiff, | : | District Judge Algenon L. Marbley |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[2]**

Plaintiff Kristen H. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record. (Doc. #7).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Plaintiff applied for benefits on December 30, 2019, alleging disability commencing January 1, 2010, due to several impairments, including rheumatoid arthritis, foot surgery/fusion, difficulty walking, and bunion surgery to be scheduled. (Doc. #7-6, *PageID* #231). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge ("ALJ") Jeffrey Hartranft. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 10, 2013, through her date last insured of June 30, 2021. |
| Step 2: | | Through the date last insured, she had the following severe impairments: degenerative joint disease of left foot and ankle status-post triple arthrodesis (2007); right foot and ankle degenerative joint disease status-post triple arthrodesis (2019) and bunionectomy (2021); lumbar degenerative disc disease; rheumatoid arthritis/inflammatory polyarthritis; osteoarthritis of the knees; and obesity. |
| Step 3: | | Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity, or the most she could have done, through the date last insured, despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "sedentary work … except she could occasionally operate foot controls. She could occasionally climb ramps and stairs but could not climb ladders, ropes, or scaffolds. She would be capable of occasional stooping, kneeling, crouching, and crawling and would need to avoid workplace hazards, such as unprotected heights and machinery." |

|  |  |
|---|---|
|  | Through the date last insured, she was unable to perform any past relevant work. |
| Step 5: | Through the date last insured, considering her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. |

(Doc. #7-2, *PageID* #s 40-51). Based on these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 10, 2013, the amended alleged onset date, through June 30, 2021, the date last insured. *Id.* at 51.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 38-52), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

In her Statement of Errors, Plaintiff challenges the ALJ's evaluation of the assessments from treating podiatrist, Timothy R. Holmes, DPM, and the state agency reviewing physicians, Leslie Green, M.D., and Dana Schultz, M.D. (Doc. #8, *PageID* #s 1059-65). In response, the Commissioner maintains that the ALJ properly evaluated these assessments and that his decision is supported by substantial evidence. (Doc. #9, *PageID* #s 1071-84).

Since Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when a residual functional capacity ("RFC") is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those

4

from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

*Timothy R. Holmes, DPM*

In this case, Plaintiff alleges that the ALJ erred in his evaluation of her treating podiatrist, Timothy R. Holmes, DPM. (Doc. #8, *PageID* #s 1059-63). Here, the ALJ noted that Dr. Holmes provided Plaintiff work excuses and restrictions during the relevant period secondary to bilateral foot impairments and surgical interventions. (Doc. #7-2, *PageID* #49) (citing to Doc. #7-7, *PageID* #s 449-50, 454, 458, 969-70, 974-75). Dr. Holmes also made statements that Plaintiff could not work. *See id*.

5

In addition, in April 2021, Dr. Holmes completed a medical assessment of ability to do work-related activities on behalf of Plaintiff.  (Doc. #7-8, *PageID* #s 639-43). In the assessment, Dr. Holmes indicated that Plaintiff's ability to lift, carry, stand, walk, and engage in postural activities were all impacted by her impairments. *Id*. at 639-41. Notably, in providing that Plaintiff's impairments impacted these areas of functioning, he did not indicate whether Plaintiff could do *any* amount of lifting, carrying, standing, walking, or engaging in postural activities. *Id*. Additionally, when asked for the medical evidence that supports these assessments, Dr. Holmes simply stated, "see notes." *Id*. Similarly, when asked if Plaintiff could perform sedentary or light exertional work, Dr. Holmes responded "no work." *Id*. at 643.

In reviewing these records, the ALJ initially noted that he did not consider Dr. Holmes' various statements that Plaintiff is "unable to work" to be "inherently neither valuable nor persuasive" because they are issues reserved to the Commissioner. (Doc. #7-2, *PageID* #49) (citing 20 C.F.R. § 404.1520).  Further, the ALJ found that Dr. Holmes' specific limitations that Plaintiff could not stand, walk, lift, or perform any postural activities to be "not persuasive" as they were "extreme and inconsistent" and were "no[t] supported by the objective record, including Dr. Holmes' own treatment notes." *Id*. at 49-50.  Here, the ALJ explained that "Dr. Holmes offered no specific function-by-function analysis of what [Plaintiff] could do despite her impairments but rather noted preclusion of all activities, which renders the opinion unpersuasive." *Id*. at 50. Finally, the ALJ observed that Plaintiff's "work activity during the relevant period as well as other reported physical activities are not consistent with Dr. Holmes' assessment." *Id.*

The ALJ's decision to find Dr. Holmes' assessment to be unpersuasive is supported by substantial evidence. As an initial matter, the applicable regulations require the ALJ to "articulate

6

in ...[the] decision how persuasive [he found] all of the *medical opinions* ... in [the] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). However, Dr. Holmes' statements that Plaintiff is "unable to work" or could do "no work" are not "medical opinions" as defined by the regulations. *See* 20 C.F.R. § 404.1513(a)(2) (defining a "medical opinion" as "a statement from a medical source about what [an individual] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities…"). Dr. Holmes' findings regarding Plaintiff's alleged inability to work do not include "a statement… about what [Plaintiff] can still do despite [her] impairment(s)" or a statement about "whether [Plaintiff] ha[s] one or more impairment-related limitations or restrictions" in the abilities listed in 20 C.F.R. § 404.1513(a)(2)(i)-(iv). Accordingly, because Dr. Holmes' statements that Plaintiff is "unable to work" or could do "no work" are not "medical opinions" as defined by the regulations, the ALJ had no duty to "articulate in ...[the] decision how persuasive" he found these statements under 20 C.F.R. § 404.1520c(b).

Furthermore, Dr. Holmes' conclusions that Plaintiff is "unable to work" or could do "no work" are statements on an issue reserved to the Commissioner under 20 C.F.R. § 404.1520b(c)(3)(i). As such, they are "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled … under the Act …," and the ALJ is not required to provide any analysis about how he considered them in her decision. 20 C.F.R. § 404.1520b(c) ("we will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c").

7

Accordingly, because Dr. Holmes' statements that Plaintiff is unable to work are not "medical opinions" under the regulations and are statements on an issue reserved to the Commissioner, the ALJ did not err in finding them unpersuasive.

Additionally, the ALJ did not err in finding Dr. Holmes' specific limitations—that is, that Plaintiff could not lift, carry, stand, walk, or perform any postural activities—unpersuasive. Here, the ALJ's explanation for his analysis is clearly articulated and supported by substantial evidence. The ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 404.1520c— supportability and consistency.

As for supportability, ALJ properly evaluated the supportability of Dr. Holmes' opinion by highlighting its lack of objective medical evidence and specificity. (Doc. #7-2, *PageID* #s 49-50). In particular, the ALJ noted that Dr. Holmes provided extreme limitations but failed to support these limitations, even with his own treatment notes. Indeed, the medical assessment where Dr. Holmes provided these limitations was a pre-printed "circle" or "check the box" form and, apart for his vague reference to "see notes[,]" did not contain narrative explanations for the limitations he recommended. It is well-recognized that "[a] check-the-box opinion with 'very little explanation or rationale' is not supported." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (quoting *Barber v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-00064, 2022 WL 853208, at *3 (M.D. Tenn. Mar. 22, 2022)); *see also Jared W. v. Comm'r of Soc. Sec.,* No. 2:22-CV-1786, 2023 WL 1960600, at *4 (S.D. Ohio Feb. 13, 2023) (finding an ALJ's conclusion on supportability to be supported by substantial evidence where the opinion under review was "a check-box form that contain[ed] no citations to objective medical evidence and no supporting explanation for [the provider's] opinions that Plaintiff would be unable

to function in certain areas..."). Accordingly, the ALJ reasonably found that Dr. Holmes' assessment was unsupported.

As for the consistency factor, the ALJ pointed out that Dr. Holmes' opinion was also inconsistent with the overall record. (Doc. #7-2, *PageID* #s 49-50). The ALJ had previously noted that, while Plaintiff had complained of pain with standing and walking, the objective evidence had "show[n] fairly mild findings as to knee pain and swelling and no acute synovial inflammation[]" as well as "some improvement in foot pain with surgical interventions." *Id*. at 44. Thus, these findings support the ALJ's conclusion that Dr. Holmes' extreme limitations were inconsistent with the objective record. *See Hill v. Comm'r of Soc. Sec*., 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that an ALJ's decision must be read as a whole).

Additionally, the ALJ found that Plaintiff's ability to engage in work activity and other reported physical activities during this time period to be inconsistent with Dr. Holmes' finding that she was precluded from engaging in all physical activities. (Doc. #7-2, *PageID* #50). Here, Plaintiff takes issue with the ALJ's reliance on her "part-time work" and "ability to perform basic physical activities like walking and riding a bike" as neither are "comparable to an ability to sustain full-time competitive employment." (Doc. #8, *PageID* #1061).

Contrary to Plaintiff's position, the ALJ properly considered Plaintiff's ability to work part-time and engage in these daily physical activities when evaluating Dr. Holmes' assessment. *See France v. Astrue*, No. 1:11-CV-184, 2012 WL 2913286, at *6 (S.D. Ohio July 17, 2012), *report and recommendation adopted,* No. 1:11-CV-184, 2012 WL 3731373 (S.D. Ohio Aug. 28, 2012) (the ALJ properly discounted Dr. Martinez's assessment because his limitations were inconsistent with Plaintiff's own testimony and reported daily activities). In this regard, the

9

ALJ had previously noted that Plaintiff had worked consistently throughout the relevant period, including six-hour shifts as a cashier at Kroger, which required standing. (Doc. #7-2, *PageID* #s 41, 49). The ALJ also relied on references in the record that Plaintiff was "going to the gym, daily walking, walking up to two miles, hiking five miles with a walking stick, riding a bike, and walking around an amusement park." *Id*. at 49. Such activities are inconsistent with Dr. Holmes' finding that Plaintiff could not engage in any physical activity, including standing, walking, lifting, or any postural activities. Thus, the ALJ reasonably determined that Plaintiff's ability to work and engage in certain physical activities were inconsistent with Dr. Holmes' assessment precluding all lifting, carrying, standing, walking, or engaging in any postural activities. *See, e.g.*, *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (The ALJ did not err by considering a claimant's ability to maintain part-time employment among other evidence that supported discounting several medical opinions); *Rottmann v. Comm'r of Soc. Sec.*, 2020 WL 3397744, at *3, 817 F. App'x 192 (6th Cir. June 19, 2020) ("We therefore agree with the district court that the inconsistencies between Rottmann's self-reported activities and the treating physicians' medical reports provide substantial evidence to support the ALJ's findings.").

In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring only that the ALJ articulate how he considered the supportability and consistency factors).

*Prior Administrative Medical Findings of Leslie Green, M.D., and Dana Schultz, M.D.*

Plaintiff also challenges the ALJ's review of the prior administrative medical findings provided by the state agency consultants, Leslie Green, M.D., and Dana Shultz, M.D. (Doc. #7-2, *PageID* #s 1063-65).

Dr. Green reviewed Plaintiff's file in April 2020 and opined that she could lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (Doc. #7-3, *PageID* #s 95-96). Dr. Green also found that Plaintiff could frequently stoop, kneel, crouch, crawl, and climb ramps/stairs but never climb ladders, ropes, and scaffolds. *Id.* at 96. Similarly, upon reconsideration in July 2020, Dr. Schultz largely affirmed Dr. Green's assessment but added an environmental restriction that Plaintiff should avoid all exposure to hazards, such as machinery and heights due to her joint pain caused by rheumatoid arthritis, right foot surgery, and obesity. *Id.* at 103-104.

In reviewing these findings, the ALJ explained that he found the opinions of Drs. Green and Schultz to "support a finding of 'not disabled,' which is consistent with and supported by the evidence as a whole, including evidence submitted after the consultants rendered these assessments." (Doc. #7-2, *PageID* #50). Nonetheless, the ALJ still considered their assessments to be "less persuasive" as the evidence demonstrated "greater overall exertional limitations than found by the consultants." *Id*. Specifically, the ALJ found that Drs. Green and Schultz "failed to adequately consider the combined effect of [Plaintiff's] medical conditions, particularly as it pertains to bilateral foot and knee pain in addition to rheumatoid arthritis, although well controlled," which he found to warrant "greater postural limitations in addition to reduced exertion[.]" *Id*.

11

The ALJ's review of these findings is supported by substantial evidence. Notably, the ALJ accommodated all of the physical restrictions recommended by the state agency physicians and imposed even greater restrictions in areas where he found Plaintiff's subjective complaints and the medical evidence of record to merit more physical and postural limitations. (*See* Doc. #7-2, *PageID* #s 43-50). Indeed, as noted above, the ALJ found that the combined effect of Plaintiff's conditions, particularly, her bilateral foot and knee pain and rheumatoid arthritis, warranted greater restrictions than what Drs. Green and Schultz provided. *Id*. at 50. Thus, to the extent that Plaintiff maintains that the ALJ erred in reviewing these opinions, her argument lacks merit. *See Putman v. Comm'r of Soc. Sec*., No. 2:20-CV-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) ("An ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined."); *see also Mosed v. Comm'r of Soc. Sec*., No. 2:14–cv–14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) *report and recommendation adopted*, 2016 WL 1084679 ("Plaintiff's argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing.")

In short, the ALJ appropriately considered all of the evidence of record and rendered a physical RFC assessment, which was supported by substantial evidence, including Plaintiff's complaints, medical records, and state medical opinions. *See* 20 C.F.R. § 404.1545(a)(3) (stating that RFC assessments should be "based on all of the relevant medical and other evidence"). Further, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff who "bears the burden of proving the existence and severity of limitations caused by [her] impairments" through step four of the sequential evaluation process. *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Accordingly, it was Plaintiff's burden to convince the ALJ that these impairments mandated stricter limitations. She failed to do so. *See, e.g., Cejka v. Comm'r of Soc. Sec.,* No. 12-11102, 2013 WL 1317213, at *15 (E.D. Mich. Feb. 27, 2013), *report and recommendation adopted*, No. 12-11102-DT, 2013 WL 1294133 (E.D. Mich. Mar. 29, 2013) ("Plaintiff acknowledges that no treating physician imposed any limitations on plaintiff as a result of her carpal tunnel syndrome, and does not point to any limitations imposed by any consulting or examining physician.").

For all these reasons, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. #8) be **DENIED;**

2. The Commissioner's non-disability finding be **AFFIRMED**; and

3. The case be terminated on the Court's docket.

January 11, 2024

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).